01
02
03
04
05
06
07
08
09
10

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| 11 | BRENT WILKS, | ) Case No. C06-0948-RSM-JPD |
| 12 | Plaintiff, | ) |
| 13 | v. | ) REPORT AND RECOMMENDATION |
| 14 | MICHAEL J. ASTRUE, Commissioner, Social Security Administration,[1] | ) |
| 15 | Defendant. | ) |
| 16 | | ) |

Plaintiff Brent Wilks appeals the final decision of the Commissioner of the Social
Security Administration ("Commissioner"), which denied plaintiff's application for
Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security Act, 42
U.S.C. § 1381 *et seq.* ("the Act"), after a hearing before an Administrative Law Judge
("ALJ").  For the reasons set forth below, the Court recommends that the Commissioner's
decision be REVERSED and REMANDED for further proceedings not inconsistent with the
Court's instructions.

---

[1] On February 12, 2007, Michael J. Astrue became the Commissioner of the Social
Security Administration.  Therefore, pursuant to Rule 25(d)(1) of the Federal Rules of Civil
Procedure, Michael J. Astrue is substituted for former Commissioner Jo Anne B. Barnhart as
the defendant in this suit.

REPORT AND RECOMMENDATION
PAGE - 1

01

## I.   FACTS AND PROCEDURAL HISTORY

02    Plaintiff is a forty-six year old man with a high school education and two years of

03 vocational training.  Administrative Record ("AR") at 84, 443.  He has previously worked in

04 the auto body industry as a metal technician and paint prep worker, and was also employed as

05 a boatman.  AR at 81-87, 493.  Plaintiff was last gainfully employed in 2000.  AR at 466, 488.

06    On September 18, 2002, plaintiff applied for SSI benefits based on mental impairments,

07 alleging an onset date of August 8, 2002.  AR at 65.  Plaintiff asserts that several mental

08 impairments, including anxiety, panic disorder, depression, psychosis, and schizophrenia have

09 kept him from obtaining and maintaining employment of any kind.  Dkt. No. 13 at 2-3.

10    The Commissioner denied plaintiff's claim initially and on reconsideration.  AR at 29-

11 32, 34-36.  On April 1, 2005, a disability hearing was held before the ALJ, who eventually

12 concluded that plaintiff was not disabled and denied benefits based on his finding that plaintiff

13 could perform work existing in significant numbers in the national economy.  AR at 18-26.

14 Plaintiff's administrative appeal of the ALJ's decision was denied by the Appeals Council, AR

15 at 5-7, making the ALJ's ruling the "final decision" of the Commissioner as that term is defined

16 by 42 U.S.C. § 405(g).  On July 17, 2006, plaintiff timely filed the present action challenging

17 the Commissioner's decision.  Dkt. No. 4.

18

## II.   JURISDICTION

19    Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§

20 405(g) and 1383(c)(3).

21

## III.   STANDARD OF REVIEW

22    Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of

23 social security benefits when the ALJ's findings are based on legal error or not supported by

24 substantial evidence in the record as a whole.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th

25 Cir. 2005).  "Substantial evidence" is more than a scintilla, less than a preponderance, and is

26 such relevant evidence that a reasonable mind might accept as adequate to support a

REPORT AND RECOMMENDATION
PAGE - 2

01  conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881

02  F.2d 747, 750 (9th Cir. 1989).  The ALJ is responsible for determining credibility, settling

03  conflicts in medical testimony, and resolving any other ambiguities that might exist.  *Andrews*

04  *v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  While the Court is required to meticulously

05  examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment

06  for that of the Commissioner.  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  When

07  the evidence of record is susceptible to more than one rational interpretation, it is the

08  Commissioner's conclusions that must be upheld.  *Id.*

09                     IV.  EVALUATING DISABILITY

10          As the claimant, Mr. Wilks bears the burden of proving that he is disabled within the

11  meaning of the Social Security Act ("the Act").  *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th

12  Cir. 1999).  The Act defines disability as the "inability to engage in any substantial gainful

13  activity" due to a physical or mental impairment which has lasted, or is expected to last, for a

14  continuous period of at least twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20

15  C.F.R. §§ 404.1505(a), 416.905(a).  A claimant is disabled under the Act only if his

16  impairments are of such severity that he is unable to do his previous work, and cannot,

17  considering his age, education, and work experience, engage in any other substantial gainful

18  activity existing in the national economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); *see also*

19  *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

20          The Commissioner has established a five-step sequential evaluation process for

21  determining whether a person is disabled within the meaning of the Act.  *See* 20 C.F.R. §§

22  404.1520, 416.920.  The claimant bears the burden of proof during steps one through four.  At

23  step five, the burden shifts to the Commissioner.  *Id.*  If a claimant is found to be disabled or

24  not disabled at any step in the sequence, the inquiry ends without need to consider subsequent

25  steps.

26          Step one asks whether the claimant is presently engaged in "substantial gainful

REPORT AND RECOMMENDATION
PAGE - 3

01  activity." 20 C.F.R. §§ 404.1520(b), 416.920(b).[2] If he is, disability benefits are denied. If he

02  is not, the Commissioner proceeds to step two. At step two, the claimant must establish that

03  he has one or more medically severe impairments, or combination of impairments, that limit his

04  physical or mental ability to do basic work activities. If the claimant does not have such

05  impairments, he is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does

06  have a severe impairment, the Commissioner moves to step three to determine whether that

07  impairment meets or equals any of the listed impairments described in the regulations. 20

08  C.F.R. §§ 404.1520(d), 416.920(d). A claimant whose impairment meets or equals a listing

09  for the twelve-month duration requirement is disabled. *Id.*

10      When the claimant's impairment neither meets nor equals one of the impairments listed

11  in the regulations, the Commissioner must proceed to step four and evaluate the claimant's

12  residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the

13  Commissioner evaluates the physical and mental demands of the claimant's past relevant work

14  to determine whether he can still perform that work. *Id.* If the claimant is able to perform his

15  past relevant work, he is not disabled; if the opposite is true, the burden shifts to the

16  Commissioner at step five to show that the claimant can perform some other work that exists

17  in significant numbers in the national economy, taking into consideration the claimant's RFC,

18  age, education, and work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the

19  Commissioner finds the claimant is unable to perform other work, the claimant is disabled and

20  benefits may be awarded.

## V.  DECISION BELOW

22      On September 22, 2005, the ALJ issued a decision denying plaintiff's request for SSI

23  benefits, which found:

24      1.      The claimant has not engaged in substantial gainful activity since the

---

26      [2] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit. 20 C.F.R. § 404.1572.

REPORT AND RECOMMENDATION
PAGE - 4

01    alleged onset of disability.

02    2.    The claimant's anxiety disorder and panic disorder . . . are considered
            "severe" based on the requirements in the Regulations 20 CFR §
03          416.920(c).

04    3.    These medically determinable impairments do not meet or medically
            equal one of the listed impairments in Appendix 1, Subpart P,
05          Regulation No. 4.

06    4.    The claimant's allegations regarding his limitations are not totally
            credible for the reasons set forth in the body of the decision.
07
08    5.    The claimant has the following residual functional capacity: a restriction
            to work in an atmosphere that does not have sudden loud noises or high
            stress.
09
10    6.    The claimant is unable to perform any of his past relevant work (20 CFR
            § 416.965).
11
      7.    The claimant is a "younger individual between the ages of 45 and 49"
12          (20 CFR § 416.963).

13    8.    The claimant has "more than a high school (or high school equivalent)
            education" (20 CFR § 416.964).
14
      9.    The claimant has no transferable skills from semi-skilled work
15          previously performed (20 CFR § 416.968).

16    10.   The claimant has no exertional limitations (20 CFR 416.945).

17    11.   Considering the range of work at all levels that the claimant is still
            functionally capable of performing, in combination with his age,
            education, and work experience, and using section 204.00 of the
18          Medical-Vocational Guidelines as a framework for decision-making, the
            claimant is not disabled.
19
20    12.   The claimant was not under a "disability," as defined in the Social
            Security Act, at any time through the date of this decision (20 CFR §
            416.920(g)).
21
      AR at 25.
22
                          VI.  ISSUES ON APPEAL
23
      There are two primary allegations of error:
24

25    1.    Did the ALJ Err by Failing to Hear Testimony from a Vocational Expert
            at Step Five Despite the Presence of Certain Non-Exertional
26          Impairments?
      2.    Is the ALJ's Mental RFC Assessment Unreviewable?

01

VII.   DISCUSSION

02

A.     <u>The ALJ Erred by Failing to Hear Testimony from a Vocational Expert</u>

03

<u>Despite the Presence of Significant Non-Exertional Impairments</u>

04        Plaintiff argues that the ALJ erred by failing to hear testimony from a Vocational

05  Expert (VE) at step five of the sequential evaluation process despite the presence of significant

06  non-exertional impairments.  Dkt. No. 13 at 8-10.  The Commissioners responds that the ALJ

07  was not required to call a VE and was permitted to rely on the framework of the Medical-

08  Vocational Guidelines because he properly found plaintiff capable of performing a limited

09  range of unskilled work.  Dkt. No 14 at 6-7.

10        When a clamaint has established he suffers from a severe impairment that prevents him

11  from performing any work he has done in the past, he has made a *prima facie*

12  showing of disability.  "At this point—step five—the burden shifts to the Commissioner to

13  show that the claimant can perform some other work that exists in 'significant numbers' in the

14  national economy, taking into consideration the claimant's residual functional capacity, age,

15  education, and work experience."  *Tackett*, 180 F.3d at 1100 (citing 20 C.F.R. §

16  404.1560(b)(3)).  Ordinarily, the Commissioner can meet this burden in one of two ways:  (a)

17  by the testimony of a vocational expert, or (b) by reference to the Medical-Vocational

18  Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2 ("Guidelines").

19        The Guidelines are a matrix system used to determine whether substantial gainful work

20  exists for claimants with substantially uniform levels of impairment.  *Tackett*, 180 F.3d at 1101.

21  The Guidelines categorize work by exertional level (sedentary, light, or medium) and

22  contain various factors relevant to a claimant's ability to find work, including age, education,

23  and work experience.  When a claimant's qualifications correspond to job requirements, the

24  Guidelines direct a conclusion of whether work exists that the claimant could perform, and if

25  such work exists, the claimant is considered not disabled.

26

REPORT AND RECOMMENDATION
PAGE - 6

01       Because the Guidelines categorize jobs by their physical exertion requirement, their use

02 is appropriate when it is established that a claimant suffers from exertional impairments.

03 Conversely, when a plaintiff suffers from significant *non*-exertional impairments, resort to the

04 Guidelines is inappropriate, and the ALJ may not mechanically apply them to direct a finding of

05 disability. *See Widmark v. Barnhart*, 454 F.3d 1063, 1069 (9th Cir. 2006) ("[T]he ALJ may

06 rely on the Guidelines alone 'only when the [Guidelines] accurately and completely describe

07 the claimant's abilities and limitations.'") (quoting *Jones v. Heckler*, 760 F.2d 993, 998 (9th

08 Cir. 1985) (second alteration by *Widmark* court)); *Bruton v. Massanari*, 268 F.3d 824, 827

09 (9th Cir. 2001) (same).  Instead, the ALJ must use the principles in the appropriate sections of

10 the regulations to determine whether the claimant is disabled. *Tackett*, 180 F.3d at 1101-02;

11 Social Security Ruling ("SSR") 85-15, 1985 WL 56857, at *1.[3]  Furthermore, when an ALJ

12 uses the Guidelines as a framework to evaluate non-exertional limitations not specifically

13 contemplated and completely described by the Guidelines, he must call upon a VE. *Tackett*,

14 180 F.3d at 1102.  In such a scenario, the ALJ must provide the VE with an accurate and

15 detailed description of the claimant's impairments, as reflected by the medical evidence of

16 record. *Id.* at 1101.[4]

17

18

---

19    [3]   Social Security Rulings do not have the force of law.  Nevertheless, they "constitute

20 Social Security Administration interpretations of the statute it administers and of its own
regulations," and are binding on all SSA adjudicators. 20 C.F.R. § 402.35(b); *Holohan v.*

21 *Massanari*, 246 F.3d 1195, 1203 n.1 (9th Cir. 2001).  Accordingly, such rulings are given
deference by the courts "unless they are plainly erroneous or inconsistent with the Act or

22 regulations." *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989).

23

24    [4]   The Commissioner may meet this step five burden by propounding to the VE a
hypothetical question that, at the very least, adequately reflects all the claimant's impairments

25 and limitations supported by substantial evidence in the record. *Magallanes*, 881 F.2d at 756-
57.  Using the VE, the ALJ must determine whether plaintiff is capable of his past relevant

26 work, and if not, whether his relevant work skills are transferable to other jobs.  If such skills
are not transferable, the ALJ must then determine whether the plaintiff is capable of
performing any unskilled work. SSR 85-15.

REPORT AND RECOMMENDATION
PAGE - 7

01          Here, the ALJ failed to call a VE at step five after finding plaintiff suffered from

02   severe non-exertional impairments at step two.  AR at 25.[5]  Instead, without assistance or

03   substantive explanation, the ALJ concluded that plaintiff's "ability to perform work at all

04   exertional levels is not significantly compromised by his non-exertional limitations."  AR at

05   24.  Because plaintiff's severe impairments were purely non-exertional and their affect on his

06   occupational base highly individualized, the ALJ should have called a VE to determine

07   exactly what work plaintiff was capable of performing.  *See* SSR 85-15, 1985 WL 56857, at

08   *5-8.  Rather than doing so, it appears that the ALJ summarily discounted the effects of

09   plaintiff's severe impairments and improperly used the Guidelines to make his own quasi-

10   expert determination that plaintiff was not disabled.

11          Under the circumstances of this case, the ALJ's failure to call a VE constitutes

12   reversible error.  *Tackett*, 180 F.3d at 1102; *see also Sykes v. Apfel*, 228 F.3d 259, 261 (3d

13   Cir. 2000) ("[T]he Commissioner cannot determine that a claimant's nonexertional

14   impairments do not significantly erode his occupational base under the medical-vocational

15   guidelines without . . . taking additional vocational evidence establishing as much . . . .");  *Allen*

16   *v. Barnhart*, 417 F.3d 396, 401 (3d Cir. 2005) (same); *Doolittle v. Apfel*, 249 F.3d 810, 811-

17   12 (8th Cir. 2001) (similar).  In light of the deficiencies associated with the ALJ's decision at

18   step five, the Court makes no finding on the propriety of the ALJ's conclusion that plaintiff's

19   non-exertional limitations would not significantly erode the occupational base considered in

20

21

22          [5]  The ALJ's reasons for not doing so seemed to have turned 180 degrees at some point
23   in time between the end of plaintiff's disability hearing and the beginning of the ALJ's final
     decision.  Upon conclusion of the hearing, the ALJ's comments to plaintiff and his counsel
24   reflected the belief that benefits were appropriate in light of plaintiff's severe mental
     impairments.  *See* AR at 443 ("I'm going to probably find [plaintiff] disabled if the JU
25   reports are consistent with other reports.").  The ALJ's final decision, however, accentuated
     the futility of VE testimony in a much different way.  The Court is left to guess at the reasons
26   for this abrupt change, and is convinced that the change itself further highlights the need for
     detailed VE testimony on remand.

REPORT AND RECOMMENDATION
PAGE - 8

01  section 204.00 of the Medical-Vocational Guidelines.  This determination lies first with the

02  ALJ on remand.  *Thomas*, 278 F.3d at 954.

03       The Court will, however, direct the ALJ to clarify and further develop his findings

04  regarding plaintiff's putative stress and noise restrictions when reassessing plaintiff's RFC, as

05  the individualized nature of those limitations demands a more careful analysis.  SSR 85-15,

06  1985 WL 56857, at *5-6, 8.  On remand, the ALJ should require a VE to provide testimony

07  concerning the full vocational impact of all plaintiff's impairments, including his stress and

08  noise limitations, and to clarify the effect of the assessed limitations on plaintiff's

09  occupational base.  The VE should also testify as to the availability of specific jobs in the

10  economy, if any, for which plaintiff is qualified.

11            B.    The ALJ Must Reevaluate the Plaintiff's Mental RFC on Remand

12       Because this case is being remanded for the reasons detailed above, the Court eschews

13  a detailed analysis of plaintiff's RFC argument that the ALJ erred in two distinct ways by

14  determining, confusedly and perhaps inconsistently, that plaintiff could not perform "high

15  stress" work *and* "require[d] . . . placement in a low stress environment." AR at 22, 25.  That

16  said, the Court notes that the ALJ's finding appears to have improperly reflected general

17  attributes of a given job, instead of the individualized limitations experienced by the plaintiff.

18  *See* SSR 85-15, 1985 WL 56857, at *5-6 ("The reaction to the demands of work (stress) is

19  highly individualized, and mental illness is characterized by adverse responses to seemingly

20  trivial circumstances. . . .  Thus, the mentally impaired may have difficulty meeting the

21  requirements of even so-called 'low-stress' jobs. . . .  Because response to the demands of

22  work is highly individualized, the skill level of a position is not necessarily related to the

23  difficulty an individual will have in meeting the demands of the job.").

24       This was error.  Furthermore, because the Court finds that the ALJ erred by failing to

25  hear the testimony of a VE at step five, the ALJ's mental RFC finding is likewise reversed and

26  must be reevaluated on remand.  On remand, ALJ should clarify plaintiff's stress and

REPORT AND RECOMMENDATION
PAGE - 9

01  environmental restrictions, and fully and adequately inform the VE of the same when

02  propounding a hypothetical which takes into account all of plaintiff's limitations.

03                                    VIII. CONCLUSION

04          Because the ALJ erred by failing to hear testimony from a vocational expert at step five

05  and erred in evaluating and/or articulating plaintiff's mental RFC, this case should be

06  REVERSED and REMANDED for further proceedings not inconsistent with this Report and

07  Recommendation.  In particular, the ALJ should reevaluate the medical evidence of record,

08  assess each of plaintiff's colorable mental impairments in accordance with the special technique

09  described in 20 C.F.R. § 404.1520a(c), reconsider and restate plaintiff's maximum residual

10  functional capacity, and hear testimony from a VE concerning the full vocational impact of all

11  plaintiff's impairments based on, among other things, the reassessment of plaintiff's RFC.

12  This testimony shall include answering a hypothetical that takes into account all of plaintiff's

13  limitations found after considering this additional evidence.  Throughout the proceedings on

14  remand, the ALJ (and the VE) should devote specific attention and detail to explaining how

15  plaintiff's particular non-exertional limitations affect his occupational base.  With this

16  information, the ALJ should then apply all appropriate steps of the sequential evaluation

17  process to determine whether plaintiff's severe impairments render him disabled for purposes

18  of Title XVI of the Social Security Act, 42 U.S.C. § 1382(a).  A proposed order accompanies

19  this Report and Recommendation.

20          DATED this 15th day of February, 2007.

21

22                                              _____

23                                              JAMES P. DONOHUE
                                                United States Magistrate Judge

24

25

26

REPORT AND RECOMMENDATION
PAGE - 10